

FILED

NOV - 9 2022

RORY PERRY, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.                    CRIMINAL NO. 2:22-cr-00205
                      18 U.S.C. § 1343

**TIFFANY BOWLIN**

## INFORMATION

The United States Attorney Charges:

### INTRODUCTION

At all times material to this Information:

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020, designed to provide emergency financial assistance to the millions who suffered economic effects caused by the COVID-19 pandemic.

2. Among other relief efforts, the United States sought to provide financial support to eligible businesses that could be used to offset certain business expenses.

3. The Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The SBA was headquartered in Washington, D.C., and maintained its computer servers outside of the State of West Virginia. The SBA's mission was to maintain and strengthen the nation's economy by enabling

the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

5. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

6. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were then used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, a business applying for a PPP loan had to provide documentation showing its payroll expenses.

7. A PPP loan application had to be processed by a participating lender, such as a financial institution. If a PPP loan was approved, the participating lender would fund the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. The PPP loan proceeds were required to be used by the business on certain permissible expenses, such as payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal of the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

## BACKGROUND

9. A company known to the Grand Jury (the "Tech Company") was a technology company that developed an online portal for prospective PPP loan applicants to submit their PPP loan application online. The Tech Company received PPP applications and supporting documentation online utilizing third-party servers located in the State of Kansas.

10. The Tech Company reviewed PPP applications and determined on a case-by-case basis whether a PPP loan should be granted. If a PPP loan application met the criteria for approval, the Tech Company sent, and caused to be sent, the PPP loan application to the SBA and a prospective third-party lender.

11. A lending institution known to the Grand Jury (the "Lender") was a non-bank finance company headquartered in California and was an SBA approved lender authorized to make loans as part of the PPP.

12. The Lender authorized funding of approved PPP loans through automatic clearing house ("ACH") transfers directly to the approved applicant's bank account. The Lender utilized a bank headquartered in State of California to initiate ACH transfers.

13. Defendant TIFFANY BOWLIN was a resident of Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia. She claimed to own, as the sole proprietor, a business called "Tiffany Bowlin" with a business address in Charleston, Kanawha County, West Virginia.

### THE SCHEME TO DEFRAUD

14. From on or about April 27, 2021, through on or about March 9, 2022, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia,

defendant TIFFANY BOWLIN, acting with the intent to defraud, did knowingly devise and intend to devise a scheme and artifice to obtain money and property from the SBA and the Lender, in connection with an application for PPP funds, by means of materially false and fraudulent pretenses, representations, and promises, with the intent to defraud and with knowledge of the scheme's fraudulent nature.

15. It was the purpose of the scheme to defraud for defendant TIFFANY BOWLIN to unjustly enrich herself by fraudulently obtaining loan proceeds through the PPP.

**MANNER AND MEANS OF THE SCHEME**

16. It was part of the scheme that in early 2021 defendant TIFFANY BOWLIN prepared, and caused to be prepared, a fraudulent PPP loan application (the "Fraudulent PPP Loan Application"). The Fraudulent PPP Loan Application included multiple materially false and fraudulent representations and pretenses, such as:

   a. The Fraudulent PPP Loan Application falsely claimed that defendant TIFFANY BOWLIN operated a hair salon as a sole proprietorship under the name Tiffany Bowlin.

   b. The Fraudulent PPP Loan Application falsely represented that Tiffany Bowlin received $106,600 in gross income in 2020.

    c. The Fraudulent PPP Application falsely stated that Tiffany Bowlin was established in 2019, and in operation on February 15, 2020.

    d. The Fraudulent PPP Loan Application included a false IRS Form 1040, Schedule C for the Profit or Loss from a Business ("Form 1040"), for the year 2020. The Form 1040 again falsely stated that Tiffany Bowlin had earned $106,600 in 2020.

    e. The Fraudulent PPP Loan Application fraudulently affirmed the truth of the statements made in the application.

17. In furtherance of the scheme, on or about April 27, 2021, defendant TIFFANY BOWLIN submitted and caused to be submitted the Fraudulent PPP Loan Application utilizing the Tech Company's online portal. Defendant TIFFANY BOWLIN did this despite knowing the Fraudulent PPP Loan Application was false in material respects and that she was not entitled to a PPP loan.

18. It was part of the scheme that on or about April 29, 2021, after the PPP loan was provisionally approved, defendant TIFFANY BOWLIN electronically signed and submitted, and caused to be electronically signed and submitted, a note to the SBA as the owner of the purported hair salon, even though she knew that she

did not own a hair salon and that the submitted Fraudulent PPP Loan Application contained information that was materially false.

19. In furtherance of the scheme, on or about May 13, 2021, defendant TIFFANY BOWLIN received a $20,833 PPP loan deposited into her personal bank account through an ACH transfer authorized by the Lender and guaranteed by the SBA.

20. It was part of the scheme that defendant TIFFANY BOWLIN used the fraudulently obtained funds to benefit herself personally and not to pay legitimate business expenses.

21. In furtherance of the scheme, on or about March 2, 2022, defendant TIFFANY BOWLIN submitted and caused to be submitted an online application to have the $20,833 PPP loan that she received forgiven. In doing so, defendant TIFFANY BOWLIN certified the $20,833 PPP loan was used on permissible business expenses as required by the terms of the PPP loan, even though she knew this to be false.

22. The SBA forgave defendant TIFFANY BOWLIN's PPP loan on or about March 9, 2022.

23. In this manner, from on or about April 27, 2021, through on or about March 9, 2022, defendant TIFFANY BOWLIN defrauded the SBA and the Lender out of approximately $20,833.

## WIRE TRANSMISSION TO EXECUTE THE SCHEME TO DEFRAUD

24. On or about April 27, 2021, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant TIFFANY BOWLIN having devised and intending to devise the above-described scheme and artifice to defraud the SBA and the Lender, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and caused to be transmitted by means of wire and radio communications in interstate commerce any writings, signs, signals, pictures, and sounds, that is an interstate wire signal originating from the Southern District of West Virginia sent to Kansas constituting the Fraudulent PPP Loan Application.

All in violation of Title 18, United States Code, Section 1343.

## **NOTICE OF FORFEITURE**

1. The allegations contained in this Information are hereby re-alleged and incorporated by reference for the purpose of giving notice of forfeiture pursuant to 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461(c).

2. Notice is hereby given of 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including, but not limited to 18 U.S.C. §§ 981, 982 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C).

The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this Information;

b. All property involved in such violations or traceable to property involved in such violations; and

c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed

beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more grounds stated above: a forfeiture money judgment in the amount of approximately $20,833, such amount constituting the proceeds of the violations set forth in this Information.

UNITED STATES OF AMERICA

WILLIAM S. THOMPSON
United States Attorney

By: _____
M. RYAN BLACKWELL
Assistant United States Attorney